United States District Court
Southern District of Texas
**ENTERED**
August 30, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LAYNE ALAN DEROUEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00292 |
| | § | |
| ARANSAS COUNTY DETENTION | § | |
| CENTER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Layne Alan DeRouen, a Texas prisoner appearing *pro se* and *in forma pauperis*, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Austin Cox ("Officer Cox"), a jailer, sexually assaulted him on two occasions in August 2022 during Plaintiff's pretrial confinement at the Aransas County Detention Center in Rockport, Texas.[1] (Doc. No. 1.) Pending before the Court is Officer Cox's motion for summary judgment based on qualified immunity. (Doc. No. 44.) The undersigned recommends that Officer Cox's motion be GRANTED and that Plaintiff's lawsuit be DISMISSED.

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1] Plaintiff is currently confined at the Texas Department of Criminal Justice-Correctional Institutions Division's Ramsey Unit in Rosharon, Texas.

### B. *Proceedings.*

Plaintiff filed this suit, alleging that Officer Cox sexually assaulted Plaintiff twice during Plaintiff's pretrial confinement at the Aransas County Detention Center, on August 13 and August 22, 2022.  (Doc. Nos. 1, 13, 14.)  Plaintiff further alleged that other named defendants failed to respond to Plaintiff's grievances about the alleged sexual assault, failed to intervene during the incidents, failed to investigate the allegations, and retaliated against Plaintiff for reporting the assault.  *Id.*

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(c), 28 U.S.C. § 1915A, the undersigned screened Plaintiff's case and recommended that the district court retain only Plaintiff's sexual assault claims against Officer Cox in his individual capacity and dismiss his remaining claims against the other defendants.  (Doc. No. 19.)  The district court adopted this recommendation.  (Doc. No. 21.)

The Court ordered service of process on Officer Cox.  (Doc. No. 31.)  Officer Cox answered Plaintiff's complaint and asserted qualified immunity.  *See* Doc. No. 40; *id.* at 2 ¶ 12. Upon order of the Court (Doc. No. 41), Officer Cox moved for summary judgment based on qualified immunity (Doc. No. 44).  Officer Cox supported his motion with surveillance video recordings of Plaintiff's cell pod, capturing Plaintiff's encounters with Officer Cox on August 13 and August 22, 2022 – the dates of the alleged sexual assaults.  (Doc. No. 44-2.)[2]  Officer Cox also provided his own declaration (Doc. No. 44-3), as well as the declarations of Aransas County Detention Center Lieutenant Hector Martinez ("Lieutenant Martinez") (Doc. No. 44-1) and Officer Joshua Doane ("Officer Doane") (Doc. No. 44-4).

---

[2]  Consistent with Officer Cox's descriptions, the undersigned cites to the August 13 video as "Exhibit 1-A," and the August 22 video as "Exhibit 1-B."  *Id.*

Plaintiff objected to Officer Cox's summary judgment evidence, asserting that the August 13 video was incomplete in that it did not include a second encounter that allegedly occurred between Plaintiff and Officer Cox on that date. (Doc. No. 45, pp. 2-3.) By order of the Court (Doc. No. 46), Officer Cox filed a written advisory responding to Plaintiff's contention and included the surveillance video footage of Plaintiff's cell pod from Officer Cox's entire shift from August 12 to August 13. (Doc. No. 47.)

Plaintiff then responded to Officer Cox's motion for summary judgment (Doc. No. 48), but separately requested that the Court allow Plaintiff to view the video footage of Officer Cox's full August 12-13 shift because Plaintiff was unable to do so at the Ramsey Unit where Plaintiff was confined. (Doc. Nos. 50, 55). The Court granted Plaintiff's request and also allowed him to submit one written supplement to his response to Officer Cox's motion for summary judgment. (Doc. Nos. 51, 54, 56, 64.)

After ensuring that Plaintiff was able to access and watch all of the video discovery at the Ramsey Unit (Doc. Nos. 54, 56, 64), the Court received written confirmation from the Ramsey Unit that Plaintiff had been able to view the surveillance video footage (Doc. No. 67).[3] Plaintiff, however, did not file any supplemental response.

### C. Plaintiff's allegations against Officer Cox.

Plaintiff accuses Officer Cox of sexually assaulting him on two separate occasions in the Aransas County Detention Center, on August 13 and 22, 2022. (Doc. No. 1, p. 4; Doc. No. 1-1, p. 4; Doc. No. 13, pp. 1-2.)

---

[3] Specifically, the Ramsey Unit law library stated that Plaintiff viewed the video discovery on June 19, 2024, for a period of one hour and five minutes from 10:00 a.m.to – 11:05 a.m., and then "stated that he was done and wouldn't need to view it again." (Doc. No. 67, p. 1.) Plaintiff was advised that the law library would maintain the USB/thumb drive for a two-week period, "so that if he wanted to view the videos again, he could." *Id.* Plaintiff declined, and the USB was returned to counsel for Officer Cox. *Id.*

### 1. *August 13, 2022.*

Plaintiff alleges that on August 13, 2022, at around midnight, Officer Cox approached Plaintiff while Plaintiff was sleeping in his bottom bunk, and grabbed Plaintiff's arm to wake him up.  (Doc. No. 1, p. 4; Doc. No. 1-1, p. 4; Doc. No. 13, p. 1.)  Plaintiff does not allege that this touching was sexual in nature, but states that he "was scared at first, then [] felt [Officer Cox] was too friendly waking me up like that," and believes that Officer Cox's contact caused Plaintiff mental anguish and physical abuse.  (Doc. No. 13, p. 1.)

Plaintiff next alleges that later, at around 3:00 a.m., Officer Cox approached Plaintiff a second time and "grabbed" Plaintiff's anus and buttocks while Plaintiff was sleeping, and "poked" Plaintiff's anus until Plaintiff woke up.  (Doc. No. 1, p. 4; Doc. No. 1-1, p. 4; Doc. No. 13, p. 1.)  Plaintiff later elaborated by claiming that Officer Cox had "grabbed [Plaintiff's] buttocks and squeezed 3x with thumb on anus!"  (Doc. No. 18, p. 1; Doc. No. 15, p. 1.)  In his response to the summary judgment motion, Plaintiff states that Officer Cox "grabbed [my] anus & buttocks to wake me up to take away my mattress!"  (Doc. No. 45, p. 1 (cleaned up).)  Plaintiff does not allege that Officer Cox said anything untoward or sexual to him on August 13.

### 2. *August 22, 2022.*

Plaintiff next claims that on August 22, 2022, at around 5:45 or 6:00 p.m., Officer Cox poked him in the anus with a clipboard several times while Plaintiff was sleeping.  (Doc. No. 1, p. 4; Doc. No. 1-1, p. 4; Doc. No. 8, p. 1; Doc. No. 14, p. 7; Doc. No. 15, p. 1.)  Plaintiff contends that Officer Cox "is not supposed to touch me at all!" and that "this action proved to me that Officer Cox was personally sexually assaulting me knowingly and taunting me on purpose." (Doc. No. 14, pp. 1-2 (cleaned up).)  Plaintiff does not allege that Officer Cox said anything untoward or sexual to him on August 22.

4/28

### D. *Officer Cox's motion for summary judgment.*

In his motion for summary judgment, Officer Cox asserts that his only encounters with Plaintiff occurred when Officer Cox entered Plaintiff's cell pod with other detention officers to conduct a "shakedown" for contraband in the early morning hours on August 13, and a routine face-to-face welfare check at shift change on August 22 around 6:00 p.m.  (Doc. No. 44, p. 1.)

Officer Cox moves for summary judgment on the basis of qualified immunity on two grounds.  First, Officer Cox argues that his actions did not amount to a constitutional violation.  (Doc. No. 44, pp. 8-12.)  Officer Cox asserts that Plaintiff's claims of sexual assault are baseless, fanciful, fantastic, or delusional.  *Id.* ¶ 24 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).  He states that the summary judgment evidence conclusively establishes that Officer Cox "only briefly touched Plaintiff to get his attention in order to conduct a contraband check and a face-to-face check" on both occasions.  *Id.* at 12 ¶ 22; *see also* Doc. Nos. 44-1, 44-2 (Exhibit A & Exhibit B), 44-3, 44-4, 47.  He further contends that any touching of Plaintiff was "in accordance with a legitimate security interest . . . as part of cell checks which are done in good faith to maintain order and check on the welfare of the inmates," and that the alleged touching was not done in a humiliating or degrading manner.  (Doc. No. 44, p. 12 ¶ 23.)

Second, Officer Cox argues that his conduct did not violate clearly established law.  (Doc. No. 44, p. 13 ¶ 25.)  Specifically, he states that "[a] reasonable corrections officer could have found it necessary to briefly and gently pat Plaintiff on the side to wake him up from his bunk bed to conduct a contraband search in the cell pod and a face-to-face check," and could have believed that Officer Cox's actions toward Plaintiff were reasonable, lawful, and justified under the circumstances.  *Id.*  Officer Cox also claims that the law is not clearly established where "isolated touchings with little if any resulting physical or psychological damage amount to

constitutional violation." *Id*. (citing *Copeland v. Nunan*, No. 00-20063, 2001 WL 274738, at *3 (5th Cir. Feb. 21, 2001)) (cleaned up).

In his response, Plaintiff alleges that on August 13, Officer Cox sexually assaulted him at 2:00 a.m., and that another officer, "Officer Smith," "watched [the assault] in shock." (Doc. No. 48, p. 1.)  He states that Officer Cox told him to remove his second mattress from his bunkbed and place it on the floor next to his wheelchair. *Id*.  Plaintiff goes on to state that "the video will show my 2nd mattress picked up off the floor next to my bunk in [the cell pod] exactly 10 days after sexual assault." *Id*. at 2.  Plaintiff also claims that Officer Cox sexually assaulted another inmate on August 23, and that on September 1, Officer Estrada and Officer Arnt reviewed video footage from August 13, and that Officer Estrada stated, "Look like Cox grabbed his ass to me!" and Officer Arnt replied, "At least we know he ain't lying!" *Id*. (cleaned up).

Although Plaintiff had the opportunity to provide a supplemental response to Officer Cox's motion for summary judgment after he was able to view all of the video evidence, *see* Doc. Nos. 51, 54, 56, 64, Plaintiff has not filed any additional response.

### E.  *The summary judgment evidence.*

Plaintiff's summary judgment evidence consists of his pleadings and motions sworn under penalty of perjury:

- Plaintiff's responses to the Court's screening questionnaire (Doc. Nos. 13, 14);

- Plaintiff's "motion to discover summary judgment evidence," which contains some factual assertions and is filed under penalty of perjury (Doc. No. 45); and

- Plaintiff's response to the summary judgment motion, which contains some factual assertions and is filed under penalty of perjury (Doc. No. 48).[4]

Officer Cox has not contested any of Plaintiff's summary judgment evidence.

Officer Cox's summary judgment evidence consists of the following:

- Declaration of Lieutenant Martinez (Doc. No. 44-1);

- Declaration of Officer Cox (Doc. No. 44-3);

- Declaration of Officer Doane (Doc. No. 44-4);

- Surveillance video recordings of Plaintiff's cell pod on August 13 and August 22 – the dates of the alleged sexual assaults (Doc. No. 44-2, Exhibit A & Exhibit B); and

- Surveillance video footage of Plaintiff's cell pod from the entire shift that Officer Cox worked on August 12-13, 2022 (Doc. No. 47).

The only evidence that Plaintiff contested was the six-minute video of his encounter with Officer Cox on August 13 (Doc. No. 44-2, Exhibit A): Plaintiff stated that the video was incomplete, and that there was a second encounter. However, this dispute has since been resolved by Officer Cox's submission of video covering his entire shift from August 12 to August 13. Plaintiff does

---

[4] Plaintiff's competent summary judgment evidence does not, however, include the hearsay statements he attributes to Officer Estrada and Officer Arnt (apparently Aransas County Detention Center jail officials). In his response to Officer Cox's motion for summary judgment, which Plaintiff swears is true and correct under penalty of perjury, Plaintiff states that on September 1, Officer Estrada and Officer Arnt reviewed video footage from August 13, and that Officer Estrada stated, "Look like Cox grabbed his ass to me!" and Officer Arnt replied, "At least we know he ain't lying!" (Doc. No. 48, p. 2 (cleaned up).) To the extent that Plaintiff's response is construed as a declaration and that it offers these statements as evidence in support of his claims that Officer Cox sexually assaulted him on August 13, the officers' statements are inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. The hearsay rule applies with equal force in the context of a summary judgment. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (hearsay evidence is inadmissible for summary judgment purposes under Rule 56). Because Officer Estrada and Officer Arnt's alleged statements do not fall within any hearsay exception, the undersigned does not consider them as competent summary judgment evidence here. Cf. *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (courts cannot consider hearsay evidence in affidavits and depositions).

not dispute the video evidence presented for the August 22 encounter.  In addition, Plaintiff does not otherwise dispute the submitted declarations.

### 1. *The video evidence.*

The video evidence consists of footage of Plaintiff's cell pod from approximately 12:19 a.m. to 12:25 a.m. on August 13 (Doc. No. 44-2 Exhibit A), footage of Plaintiff's cell pod from approximately 5:35 p.m. on August 12 to 6:05 a.m. on August 13 – the alleged duration of Officer Cox's shift (Doc. No. 47 Exhibit; *see also* Doc. No. 47, p. 1), and footage of Plaintiff's cell pod at around 6:00 p.m. on August 22 (Doc. No. 44-2 Exhibit B).[5]

### a. *August 13.*

The video evidence shows that on August 13 at approximately 12:19:19 a.m., Officer Cox entered Plaintiff's cell pod, wearing his uniform, a hat, and gloves, for what Officer Cox later stated was a contraband sweep.[6]  (Doc. No. 44-2 Exhibit A; Doc. No. 44-3, p. 1 ¶ 3.)  Three additional officers followed.  (Doc. No. 44-2 Exhibit A at 12:19:23 a.m.)  Officer Cox walked to the left side of the cell pod, where there is a double bunkbed which is located outside the camera's direct eyeshot but is clearly visible in the reflection of the cell pod's observational window.

Through the reflection, the video shows that Officer Cox approached the bunk, reached his arm out to the upper bunk, and then stepped aside as an inmate got up from the bunk, walked to the table in the middle of the cell pod, and sat down.  (Doc. No. 44-2 Exhibit A at 12:19:28 a.m.)  Officer Cox then approached and stood close to the bottom bunk, and reached his hand toward the bunk.  He then stepped back while the fully clothed Plaintiff sat up, and then held

---

[5]  All three of the video recordings are without sound.

[6]  Plaintiff has not disputed this assertion.

8/28

Plaintiff's hand and assisted Plaintiff into his wheelchair.  Plaintiff then rolled his wheelchair to

the table in the center of the cell pod.  Officer Cox then conducted a check of the rest of the cell

pod.  Officer Cox's interaction with Plaintiff lasted no more than 15 seconds, and he did not

interact with Plaintiff again during the contraband sweep.  *Id*. at 12:20:04 a.m. – 12:20:28 a.m.

Approximately four and one-half minutes after entering the cell pod, Officer Cox and the other

officers exited the cell pod.  *Id*. at 12:23:40 a.m.

      After the 12:19 a.m. contraband check of the entire cell pod, Plaintiff returned to his bunk

and covered himself with a blanket.  (Doc. No. 47 Exhibit at 12:24:46 a.m.)  Plaintiff remained

in his bunk until the second encounter, which occurred just after 1:00 a.m.  That second

occasion, Plaintiff alleges, is when Officer Cox "grabbed" Plaintiff's anus and buttocks while

Plaintiff was sleeping, and that he "poked" Plaintiff's anus with his hand and thumb until

Plaintiff woke up, in order to take away his mattress.  (Doc. No. 1, p. 4; Doc. No. 1-1, p. 4; Doc.

No. 13, p. 1; Doc. No. 15, p. 1; Doc. No. 18, p. 1; Doc. No. 45, p. 1.)

      At 1:03 a.m., Officer Cox and other officers re-entered the cell pod and removed a

mattress from another inmate's bunk.  Officer Cox and the other officers then left the cell pod

and returned at 1:07.  Officer Cox woke another inmate on the other side of the cell pod from

Plaintiff's bunk by touching that inmate's arm.  The inmate rolled over to face Officer Cox.

Officer Cox verbally engaged with the inmate, who then sat up, put on his shoes, and got out of

the bunk.  Officer Cox then took one of that inmate's mattresses as well (the inmate appears to

have had two mattresses).  Officer Cox then walked briskly over to Plaintiff's bunk.  Officer Cox

bent and reached down toward Plaintiff's bunk.  At this point, the reflection is obstructed by

Officer Cox's body, but after approximately 15 seconds, Officer Cox stood upright and backed

away from the bunk.  Still fully clothed, Plaintiff then moved from his bunk to his wheelchair;

9/28

Plaintiff removed a mattress from his bunk and placed it on the ground while Officer Cox stood

by and looked on.  Plaintiff then returned to his bunk and re-covered himself with a blanket, and

Officer Cox walked to the other side of the pod and engaged with yet another inmate and

removed that inmate's mattress as well.  (Doc. No. 47 Exhibit at 1:07:38 a.m. – 1:09:37 a.m.)

Officer Cox and the other officers left the cell pod.  Officer Cox and the other officers had been

in the cell pod for a total of approximately three minutes.  *Id.* at 1:10:25 a.m.

All of this occurred in a brightly-lit room in full view of at least two other corrections

officers and at least three other inmates, one of whom was looking directly at Plaintiff in his

bunk during the entire time that Officer Cox was standing next to the bunk.

### b. August 22.

The video from August 22 shows that Officer Cox entered Plaintiff's cell pod with

Officer Doane, and that Officer Cox approached Plaintiff's bunk while looking at a clipboard

that Officer Cox was holding.  Officer Cox leaned toward Plaintiff's bunk, tapped Plaintiff once

lightly with the side of his clipboard, and then turned away.  (Doc. No. 44-2 Exhibit B at 1

minute 33 seconds.)  Officer Cox's interaction with Plaintiff lasted exactly six seconds.  *Id.* at 1

minute 40 seconds – 1 minute 46 seconds.  After speaking with other inmates who were gathered

at a table in the center of the cell pod, Officer Cox then approached a bunk on the other side of

the cell pod, used his clipboard to tap that inmate as well, and gave a thumbs-up to that inmate.

*Id.* at 2 minutes 15 seconds.  He then left the cell pod.  Officer Cox and Officer Doane spent less

than one minute in the cell pod before exiting it.  *Id.* at 1 minute 33 seconds – 2 minutes 20

seconds.  Officer Cox's six-second interaction with Plaintiff occurred in a brightly-lit room in

full view of Officer Doane and at least four other inmates who were gathered at the table in the

center of the pod.

10/28

### *2. Lieutenant Martinez declaration.*

Lieutenant Martinez declares that he is the custodian of records for the Aransas County Detention Center, and that the video recordings of Officer Cox's encounters with Plaintiff on August 13 and August 22, 2022, provided in support of Officer Cox's motion for summary judgment, are the true and correct copies of the videos stored with the Aransas County Sheriff's Office. (Doc. No. 44-1, p. 1 ¶ 3.) Lieutenant Martinez also avers that "it is common practice at the Aransas County Detention Center for jailers to perform welfare checks on inmates routinely," which are commonly known as "face-to-face observations." *Id*. ¶ 5. He states that jailers should make "face-to-face contact with every inmate in the cell" while performing face-to-face observations, and "[i]f an inmate is asleep or laying in the bunk facing away from the jailer, the jailer may have to make physical contact with the inmate in order to make the face-to-face observation." *Id*. Lieutenant Martinez maintains that "[t]his practice is done for the well-being of the inmates and to comply with jail standards." *Id*.

### *3. Officer Cox declaration.*

Officer Cox declares that he was a jailer at the Aransas County Detention Center in August 2022, at the time Plaintiff was confined there. (Doc. No. 44-3, p. 1 ¶ 2.) Officer Cox describes that on August 13, he along with other detention officers entered the cell pod where Plaintiff was housed at approximately 12:19 a.m. to conduct a sweep of the cell for contraband. *Id*. ¶ 3. He states that he approached the bunks of Plaintiff and another inmate and instructed them to get out of their bunks and proceed to the center of the room, so that a sweep of the cell pod could be performed. *Id*. Officer Cox asserts that "it took [Plaintiff] a little longer to [get out of his bunk], because [Plaintiff] needed a wheelchair," and that he assisted Plaintiff in getting in his wheelchair before stepping away to continue performing the cell check. *Id*. Officer Cox

claims that "[a]t no time did I touch [Plaintiff] in an offensive manner or sexually assault him in any way. This was my only encounter with [Plaintiff] during the early morning hours of August 13, 2022." *Id.*

Turning to his August 22 encounter with Plaintiff, Officer Cox describes that he and Officer Doane conducted a routine "face-to-face" check of the type regularly performed at shift change.[7] (Doc. No. 44-3, p. 1 ¶ 4.) Officer Cox explains that "[d]uring a face-to-face check, officers are to make an inspection of the cell pod and visually make face-to-face contact with each inmate." *Id.* Officer Cox states that when he entered the cell pod to perform the face-to-face check, he noticed Plaintiff laying down in his bunk but could not see his face. *Id.* at 1-2 ¶ 4. Officer Cox then approached Plaintiff's bunk and attempted to make verbal contact with him. *Id.* at 2 ¶ 4. When Plaintiff did not respond, Officer Cox states, that he "tapped [Plaintiff] one time to get his attention." Once Officer Cox tapped Plaintiff, Plaintiff responded, and Officer Cox was able to make face-to-face contact with him. *Id.* (citing Exhibit B, at 2 minutes 15 seconds). Officer Cox maintains that "[a]t no time during this encounter with [Plaintiff] did I touch [Plaintiff] in an offensive manner or sexually assault him in any way. After this encounter, I did not have any other dealings with [Plaintiff] on August 22, 2022." *Id.*

### *4. Officer Doane declaration.*

Officer Doane declares that he is a jailer at the Aransas County Detention Center, and was employed at the Aransas County Detention Center at the time Plaintiff was an inmate there. (Doc. No. 44-4, p. 1 ¶ 3.) Officer Doane states that on August 22 at approximately 6:00 p.m., he entered Plaintiff's cell pod with Officer Cox in order to conduct a routine "face-to-face" welfare check, which occurs at shift change, where the officers "must make eye contact with everyone in

---

[7] Officer Cox does not specify in his declaration the time that the August 22 encounter took place.

the cell." *Id*. Officer Doane observed that Plaintiff was in his bunk when Officer Cox walked over to perform the face-to-face check. *Id*. Officer Doane states that he has viewed the video recording of the August 22 encounter and stated that, although Plaintiff is not seen in the video recording, he was laying in his bunk bed at the time Officer Cox approached Plaintiff. *Id*. ¶ 4. Because Plaintiff did not respond to the officers entering the cell pod, Officer Doane states, Officer Cox "had to walk over to [Plaintiff] to perform a face-to-face check on him," and that "[Officer Cox's] interactions with [Plaintiff] lasted no more than 5 seconds." *Id*. Officer Doane notes that Officer Cox conducts the same face-to-face check on another inmate on a lower bunk at the 2 minute 15 second mark in the Exhibit B video recording. *Id*.

Officer Doane asserts that "[a]t no time during the face-to-face check on August 22, 2022, did [Officer] Cox sexually assault [Plaintiff] or touch him in any manner that could be seen as inappropriate. [Officer] Cox never removed the blanket that was over [Plaintiff] nor any of [Plaintiff]'s clothing." (Doc. No. 44-4, p. 2 ¶ 4.) Officer Doane concludes that based on his education, experience, knowledge, and training, "a reasonable jailer in a similar situation[] could believe that [Officer] Cox's actions in performing the face-to-face check in the manner in which he did was reasonable and lawful." *Id*. ¶ 5.

### F. Legal standards.

#### 1. Summary judgment.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine

13/28

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

Courts must draw all justifiable inferences in favor of the party opposing the motion, and resolve any disputed material facts in the nonmovant's favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Thus, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). "The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim." *Acosta v. Williamson Cnty., Tex.*, No. 1:21-CV-00615-DII, 2023 WL 5352324, at *4 (W.D. Tex. Aug. 21, 2023), *adopted*, 2023 WL 6612521 (W.D. Tex. Oct. 10, 2023), *aff'd*, No. 23-50777, 2024 WL 3833303 (5th Cir. Aug. 15, 2024) (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)). There is no genuine dispute for trial when "the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If the nonmovant fails to sufficiently raise a genuine factual issue essential to his case and on which he bears the burden of proof at trial, and if no reasonable juror could find for the nonmovant, then summary judgment

must be granted.  *Celotex*, 477 U.S. at 322-23; *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

In making this determination, courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  Affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(c)(4).  Evidence need not be authenticated or otherwise presented in an admissible form at the summary judgment stage.  *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017).  Rather, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"  *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)).

### 2. *Qualified immunity.*

The doctrine of qualified immunity protects government officials "sued in their individual capacities 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is a generous shield: it provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The doctrine "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Thus, a government official can be held personally liable for monetary

damages only if the official's particular conduct: (1) "violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the violation," such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Ford*, 102 F.4th at 307 (quoting *Ashcroft*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If the plaintiff fails at either step, the federal court can grant qualified immunity by addressing either step or both of them." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (citing *Anderson*, 483 U.S. at 640 (cleaned up)). A binding court case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Malley*, 475 U.S. at 341. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004)). Absent controlling authority, there must be a "robust 'consensus of cases of persuasive authority.'" *Ashcroft*, 563 U.S. at 741 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). And the controlling decision or consensus must be with regard to the official's "*particular* conduct," described with specificity. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)). The inquiry is judged against the backdrop of the

law at the time of the conduct. *Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at

*8 (S.D. Tex. Sept. 20, 2022) (Tipton, J.) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

A qualified immunity defense "alters the usual summary judgment burden of proof."

*Ford v. Anderson Cnty.*, 102 F.4th 292, 307 (5th Cir. 2024) (quoting *Brown v. Callahan*, 623

F.3d 249, 253 (5th Cir. 2010)).  "Once an official pleads the defense, the burden then shifts to the

plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the

official's allegedly wrongful conduct violated clearly established law."  *Hanks v. Rogers*, 853

F.3d 738, 744 (5th Cir. 2017).

### 3.  42 U.S.C. § 1983.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting

under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510

U.S. 266, 271 (1994). To prevail on a § 1983 claim, the plaintiff must prove that a person acting

under the color of state law deprived him of a right secured by the Constitution or laws of the

United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under

color of state law if he or she misuses or abuses official power and if there is a nexus between the

victim, the improper conduct, and the defendant's performance of official duties. *Townsend v.

Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### 4.  Pretrial detainees, sexual assault, and the Fourteenth Amendment.

The Fifth Circuit has not prescribed a standard from which to analyze a pretrial detainee's

Fourteenth Amendment rights in the context of sexual assault.  In screening the Plaintiff's

complaint, the undersigned analyzed Plaintiff's sexual assault claims under the standard for

excessive use of force, as applied by sister circuits and another district court in this circuit.  *See*

Doc. No. 19, p. 15 (citing *Lamas v. Hale Cnty.*, No. 5:20-CV-216-BQ, 2021 WL 4822840, at *1

(N.D. Tex. July 30, 2021), *adopted sub nom. Lamas v. Gonzales*, 2021 WL 4822498 (N.D. Tex. Oct. 15, 2021) (noting the Supreme Court and relying on analysis provided by the Tenth and Third Circuits)); *see also Glover v. Paul*, 78 F.4th 1019, 1022 (8th Cir. 2023) (applying the excessive force framework to analyze the sexual harassment of a pretrial detainee on summary judgment).  The undersigned does the same here.

To sufficiently state an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  A pretrial detainee can prevail only if he or she shows that the defendant applied force in a manner that was not rationally related to a legitimate nonpunitive governmental purpose, or that the actions were excessive in relation to that purpose.  *Id.* at 398.

Objective reasonableness, for purposes of the *Kingsley* analysis, turns on the facts and circumstances of each particular case.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security."  *Kingsley*, 576 U.S. at 399.  In determining the objective reasonableness of an officer's use of force, courts consider at least the following non-exclusive factors, enumerated in *Kingsley*: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.  *Id.* at 397.  Assessments of the reasonableness of force must be made from the perspective of a jailer who is often forced to make split-second decisions in tense situations.

18/28

*Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 363 (5th Cir. 2022) (citing *Kingsley*, 576 U.S. at 399).

"A pretrial detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The Eighth Amendment's excessive force analysis maintains an objective component, but further focuses on the prison official's "subjective intent to punish." *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Because *Kingsley* "only deleted the subjective prong of the Fourteenth Amendment analysis," *Ullery v. Bradley*, 949 F.3d 1282, 1296 n.5 (10th Cir. 2020), Eighth Amendment authority on the "objective" prong is still persuasive to determine whether the violative nature of the official's particular conduct is clearly established. *See Glover*, 78 F.4th at 1022 ("[E]arlier authorities concluding that a particular use of force violated the Eighth Amendment (and was therefore objectively unreasonable) [are] sufficient to put an official on notice that the same use of force against a detainee would violate the Fourteenth Amendment.").

### G. *Officer Cox is entitled to qualified immunity.*

Plaintiff asserts sexual assault claims under 42 U.S.C. § 1983 against Officer Cox. Officer Cox argues that he is entitled to summary judgment on the basis of qualified immunity because the evidence conclusively shows that his actions did not amount to a constitutional violation and did not violate clearly established law. The undersigned agrees, and recommends that summary judgment be granted in this case.

The inquiry to be addressed here is whether Officer Cox's conduct amounted to a constitutional violation during August 13 and August 22 encounters during Plaintiff's pretrial

detention, and if so, whether Officer Cox's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.  *See Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

The competent summary judgment evidence, particularly the uncontroverted video evidence, shows that Officer Cox's conduct on August 13 and August 22 did not amount to a constitutional violation and did not violate clearly established law.  Plaintiff and Officer Cox tell two different stories: Plaintiff alleges that Officer Cox "sexually assaulted" him on two separate occasions, August 13 and August 22, by touching Plaintiff on the anus and the buttocks, using his hand and then a clipboard.  Officer Cox, meanwhile, argues that he did not sexually assault Plaintiff when he entered the cell pod on those dates to conduct a routine contraband "shakedown" (on August 13) and a routine welfare face-to-face check (on August 22).

Summary judgment is proper only if no genuine issue of material fact exists.  As discussed above, a court considering a summary judgment motion must draw all justifiable inferences in favor of the party opposing the motion.  *Caboni*, 278 F.3d at 451.  But if a party's version of events is "blatantly contradicted" by the record, such as by a video recording, such that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *See McDowell v. Wal-Mart Stores, Inc.*, 811 F. App'x 881, 883 (5th Cir. 2020) (citing *Scott*, 550 U.S. at 380); *see also Hodge v. Engelman*, 90 F.4th 840, 846 (5th Cir. 2024) ("In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment.").  In that situation, courts are to reject "a plaintiff's description of the facts where the record discredits that description [and] instead consider 'the facts in the light depicted by the videotape.'"  *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott*, 550 U.S. at 381).

20/28

### *1. No reasonable juror could find that Officer Cox used excessive force or sexually assaulted Plaintiff on August 22.*

Officer Cox clearly did not assault Plaintiff, sexually or otherwise, on August 22.  The video from that date[8] shows that Officer Cox entered Plaintiff's cell pod with Officer Doane, and that Officer Cox approached Plaintiff's bunk while looking at a clipboard that Officer Cox was holding.  Officer Cox leaned toward Plaintiff's bunk, tapped Plaintiff once lightly with the side of his clipboard, and then turned away.  (Doc. No. 44-2 Exhibit B at 1 minute 33 seconds.)  Officer Cox's interaction with Plaintiff lasted exactly six seconds.  *Id.* at 1 minute 40 seconds – 1 minute 46 seconds.  After speaking with other inmates who were gathered at a table in the center of the cell pod, Officer Cox then approached a bunk on the other side of the cell pod, used his clipboard to tap that inmate as well, and gave a thumbs-up to that inmate.  *Id.* at 2 minutes 15 seconds.  He then left the cell pod.  Officer Cox and Officer Doane spent less than one minute in the cell pod before exiting it.  *Id.* at 1 minute 33 seconds – 2 minutes 20 seconds.[9]  Officer Cox's

---

[8] Unlike the August 13 video recording, the August 22 footage does not bear a date or time stamp.  *See* Doc. No. 44-2 Exhibit B.  Moreover, Lieutenant Martinez's attestation that the video footage captures Plaintiff's August 22 encounter with Officer Cox does not cite a specific time of the recorded encounter.  However, Officer Doane's declaration provides that he was with Officer Cox during the August 22 encounter, that he reviewed the video recording of that encounter (which he states was from "approximately" 6:00 p.m.) and attests to his declaration as being true and correct.  (Doc. No. 44-4, p. 1 ¶ 3.)  As stated above, evidence need not be authenticated or otherwise presented in an admissible form at the summary judgment stage.  *Maurer*, 870 F.3d at 384.  Materials need only be capable of being presented in a form that would be admissible in evidence.  *LSR Consulting, LLC*, 835 F.3d at 534.  "[A] party satisfies the authentication requirement if the document's form and content, taken with other circumstances, indicate the document is reliable."  *Dugas v. Ace Amer. Ins. Co.*, 468 F. Supp. 3d 769, 774 (W.D. La. 2020) (citing Fed. R. Evid. 901(b)(4)).  Although there is no time stamp, the undersigned is satisfied that Officer Cox has presented sufficient evidence authenticating the video through the declarations of Lieutenant Martinez and Officer Doane in order to consider the video as described by Officer Cox for summary judgment.  The video could easily be authenticated by a refreshed affidavit for purposes of trial if required, and that further authentication now is not necessary to adjudicate this motion.  Plaintiff has raised no objection to the video's accuracy or depiction, so the video evidence is not otherwise in dispute.  *See Moore v. Denbury Onshore, LLC*, No. 3:14CV913, 2016 WL 843384, at *4 n.2 (W.D. La. Mar. 1, 2016) (consideration of video appropriate where opposing party "makes no claim of (or offers any reason to suspect) fraud or tampering, nor does it say that the videos do not show actual footage of the event in question" (cleaned up)).

[9] Plaintiff has not challenged Officer Cox's assertion of the purpose of his entry into the cell pod on August 22, nor does he dispute that Officer Doane accompanied Officer Cox or the time – which, is approximately the same time Plaintiff has stated in his pleadings that the alleged sexual assault occurred.  *See* Doc. No. 1, p. 4 (alleging 6:00

21 / 28

six-second interaction with Plaintiff occurred in a brightly-lit room[10] in full view of Officer

Doane and at least four other inmates who were gathered at the table in the center of the pod.

Officer Doane's uncontroverted declaration states that Plaintiff was covered by a blanket during

the entire encounter.  (Doc. No. 44-4, p. 2 ¶ 4.)  The evidence is crystal clear that no assault,

much less any sexual assault, occurred.  Because no constitutional violation occurred, Officer

Cox is entitled to qualified immunity on Plaintiff's August 22 claim.

### 2.  *No reasonable juror could find that Officer Cox used excessive force or sexually assaulted Plaintiff on August 13.*

As described above, the August 13 video shows that Officer Cox entered Plaintiff's cell

pod with other detention officers twice in the early morning hours of August 13.  *See* Doc. No.

44-2 Exhibit A at 12:19:19 a.m.; Doc. No. 47 Exhibit at 1:07:37 a.m.  After the 12:19 a.m.

contraband check of the entire cell pod, Plaintiff returned to his bunk and covered himself with a

blanket.  (Doc. No. 47 Exhibit at 12:24:46 a.m.)  Plaintiff remained in his bunk until the second

encounter just after 1:00 a.m.  On that second occasion, Plaintiff alleges, Officer Cox "grabbed"

Plaintiff's anus and buttocks while Plaintiff was sleeping, and "poked" Plaintiff's anus with his

hand and thumb until Plaintiff woke up, in order to take away his mattress.  (Doc. No. 1, p. 4;

Doc. No. 1-1, p. 4; Doc. No. 13, p. 1; Doc. No. 15, p. 1; Doc. No. 18, p. 1; Doc. No. 45, p. 1.)

The uncontested video shows that at 1:03 a.m., Officer Cox and other officers entered the

cell pod and removed a mattress from another inmate's bunk.  Officer Cox and the other officers

returned at 1:07.  The video evidence shows that Officer Cox first woke another inmate on the

other side of the cell pod by touching that inmate's arm; Officer Cox then took one of that

---

p.m.); Doc. No. 1-1, p. 4 (same); Doc. No. 8, p. 1 (same); Doc. No. 15, p. 1 (same); Doc. No. 14, p. 2 (same, at "shift change"); Doc. No. 14, p. 7 (alleging 5:45 p.m. at "shift change").)

[10] Indeed, Plaintiff states that he was facing the wall while on his bunk, "to block the light."  (Doc. No. 13, p. 2 ¶ 4.)

inmate's mattresses as well (he appears to have had two).  Officer Cox then walked briskly over to Plaintiff's bunk.  Officer Cox reached down toward Plaintiff's bunk.  After approximately 15 seconds, Officer Cox stood upright and backed away from the bunk.  Plaintiff then moved from his bunk to his wheelchair; Plaintiff removed a mattress from his bunk and placed it on the ground while Officer Cox stood by and looked on.[11]  Plaintiff then returned to his bunk and re-covered himself with a blanket, and Officer Cox walked to the other side of the pod and engaged with yet another inmate and took that inmate's mattress too.  (Doc. No. 47 Exhibit at 1:07:38 a.m. – 1:10:22 a.m.)  All of this occurred in a brightly-lit room in full view of at least two other corrections officers and at least three other inmates, one of whom was looking directly at Plaintiff in his bunk during the entire time that Officer Cox was standing next to the bunk.

The video evidence does not show precisely where (if anywhere) on Plaintiff's body Officer Cox made physical contact on August 13, but it does conclusively show that Plaintiff was fully clothed and that he was covered by a blanket when Officer Cox approached his bunk.  The video evidence does not eliminate the possibility that Officer Cox might have touched Plaintiff through the blanket and his clothes, but as Officer Cox states in his motion for summary judgment: "At worst for Officer Cox, the competent summary judgment evidence establishes that Officer Cox briefly touched Plaintiff on his butt to get his attention while conducting cell checks."  (Doc. No. 44, p. 12 ¶ 22.)  But this lack of complete clarity from the video is enough to require the Court to accept Plaintiff's sworn assertion that Officer Cox grabbed his anus and buttocks.  *Cf. Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023) (if the "recording renders a

---

[11]  This corresponds with Plaintiff's assertion (in his response to Officer Cox's motion for summary judgment) that, during his second encounter with Officer Cox on August 13, Officer Cox told Plaintiff to remove his second mattress from his bunkbed, and place the mattress on the floor next to his wheelchair.  (Doc. No. 48, p. 1.)

party's story merely unlikely yet does not necessarily contradict it, the default rule kicks in: we must accept the party's version for purposes of considering the motion for summary judgment").

Thus, summary judgment on this claim ultimately turns on whether Plaintiff has shown that Officer Cox's actions were not rationally related to a legitimate nonpunitive governmental purpose, or that the actions were objectively excessive and unreasonable in relation to that purpose. *Kingsley*, 576 U.S. at 396-98. Weighing the *Kingsley* factors in light of the summary judgment evidence, Officer Cox's alleged acts do not amount to a constitutional violation or a violation of clearly established law.

The first *Kingsley* factor – the relationship between the need for the use of force and the amount of force used – is the most important factor to the Court's conclusion, and weighs against Plaintiff. The amount of force used on August 13 was minimal. This is confirmed by the video evidence. *Elliott v. Golston*, No. 19-2767-TLP-TMP, 2022 WL 1214495, at *7 (W.D. Tenn. Feb. 17, 2022) ("Based on the video footage, the amount of force used by Golston was minimal."), *adopted*, 2022 WL 853210 (W.D. Tenn. Mar. 22, 2022); *Quinones v. Rollison*, No. 18-cv-1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (relying on video evidence to determine that "the amount of force used was small").

Moreover, the amount of force used was not disproportional to the need for force. The Supreme Court has established that unannounced searches of inmates at irregular intervals, such as routine contraband "shakedowns" and welfare "face-to-face" checks, serve a legitimate penological interest in maintaining jail security. *Block v. Rutherford*, 468 U.S. 576, 590 (1984). It is undisputed that Officer Cox entered the cell pod in order to conduct a contraband sweep or welfare check during the encounter in question. (Doc. No. 44-3, p. 1 ¶ 3.) It is also undisputed that Plaintiff was "sound asleep," *see* Doc. No. 14, p. 2, and the evidence shows that Officer Cox

touched Plaintiff in order to wake him up.  Plaintiff alleges that Officer Cox's physical contact –
"poking" and "grabbing" Plaintiff in the anus and buttocks – "proved to me that Officer Cox was
personally sexually assaulting me knowingly and taunting me on purpose." *Id.* at 1-2.  However,
Officer Cox's subjective intent is not at issue here under Fourteenth Amendment law.

 The miniscule amount of force used by Officer Cox in the context of conducting a
contraband shakedown or "face-to-face check" – particularly because his engagement with
Plaintiff during the August 13 encounter was so brief and because he employed a similar amount
of "force" with other inmates – tips the scale in favor of Officer Cox under this first factor.
Accordingly, the undersigned finds that, in viewing the evidence in light of the videotape,
Officer Cox's contact was not excessive or sexual in nature, but in furtherance of a legitimate
interest.

 The circumstances surrounding the second and third *Kingsley* factors – Plaintiff's injury
and any effort made by Officer Cox to temper or limit the amount of force – also weigh against
Plaintiff.  While the Supreme Court has not required a particular quantum of injury, *Kingsley*,
576 U.S. at 397, the Fifth Circuit and district courts have consistently dismissed cases where the
inmate alleges nothing more than a *de minimis* injury.  *Martinez v. Nueces Cnty., Tex.*, No. 2:13-
CV-178, 2015 WL 65200, at *11 (S.D. Tex. Jan. 5, 2015) (Ramos, J.) ("Short-term pain alone is
insufficient to constitute more than *de minimis* injury for purposes of an excessive force claim.");
*Anderson v. St. Martin Par.*, No. CV 15-02588, 2016 WL 6998763, at *8 (W.D. La. May 19,
2016), *adopted as modified*, 2016 WL 6999447 (W.D. La. Nov. 29, 2016) (dismissing plaintiff's
case where he admitted he did not suffer any physical injuries).  As stated above, Officer Cox's
brief physical contact with Plaintiff was limited on both occasions.  Even after being directed by
the Court to specify the injuries he suffered, Plaintiff has not alleged anything more than "mental

anguish" and "shock" resulting from Officer Cox's alleged conduct. (Doc. No. 13, p. 1; Doc. No. 14, p. 1.) Because Plaintiff has not alleged any physical injury or pain,[12] without more, Plaintiff's anguish is at most a *de minimis* injury, which does not preclude summary judgment.

As to the remaining three factors – the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether Plaintiff was actively resisting – it is undisputed that Plaintiff was asleep at the time of the encounters on August 13, and that he apparently posed no threat to Officer Cox or anyone else at the time of the use of force. However, Plaintiff has not argued that these factors warrant denial of summary judgment, and the undersigned cannot conclude that they do. Given the minimal amount of force used, the briefness of Officer Cox's engagement Plaintiff during the encounter, and the short amount of time that Officer Cox was present in Plaintiff's cell pod, the undersigned is not persuaded that these factors carry significant weight here. *Vessell v. Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021) (even where there was no security problem, threat, or active resistance, affirming summary judgment in favor of the defendant where "there was very little 'force' used and essentially no harm done"); *see also Hutchison v. Smith*, No. 420CV0779LPRJJV, 2022 WL 4089457, at *3 (E.D. Ark. June 16, 2022), *adopted*, 2022 WL 4087644 (E.D. Ark. Sept. 6, 2022) (summary judgment in favor of defendant where minimal force was used when the plaintiff "was sleeping and pos[ed] no security threat").

Considering the *Kingsley* factors in totality, the undersigned finds that Officer Cox's use of force was not objectively unreasonable and therefore concludes that there was no violation of clearly established right and that Officer Cox is entitled to qualified immunity from Plaintiff's August 13 sexual assault claim.

---

[12] *See* Doc. No. 13, p. 1; Doc. No. 7, p. 2 (questionnaire).

26 / 28

Alternatively, should the district court determine that use of the *Kingsley* excessive force analysis is inappropriate in this context, Officer Cox is still entitled to qualified immunity.  *Cf. Tyson v. Sabine*, 42 F.4th 508, 518-19 (5th Cir. 2022).  The substantive component of the Fourteenth Amendment's Due Process Clause guarantees a "right to be free of state-occasioned damage" to his bodily integrity.  *Id.* at 517 (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc)).  Physical sexual abuse by a state official violates that right.  *Id.* at 517-18 (citing *United States v. Guidry*, 456 F.3d 493, 506 n.7 (5th Cir. 2007).  But a violation of the right to bodily integrity flows from "behavior of the governmental officer that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00190, 2024 WL 1329933, at *17 (E.D. Tex. Mar. 28, 2024) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 1998) (cleaned up)).  The burden to show state conduct that shocks the conscience is "'extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme.'"  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012) (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010)).

Officer Cox's conduct here simply does not meet that standard.  Even accepting as true Plaintiff's factual allegation that Officer Cox touched his buttocks to wake him up, the video indicates that Plaintiff was fully clothed and was covered by a blanket and that the entire encounter lasted only a few seconds on a single occasion in a brightly lit room in full view of corrections officers and other inmates.  Officer Cox's actions, viewed in the context of the video, do not rise to the extreme level of conscience-shocking behavior that could support a denial of

qualified immunity on any bodily integrity claim.[13]  Officer Cox is therefore entitled to qualified immunity because there is no violation of any clearly established constitutional right.

### H. Conclusion and recommendation.

The district court should GRANT Officer Cox's motion for summary judgment (Doc. No. 44) and DISMISS Plaintiff's lawsuit with prejudice.

### I. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on August 30, 2024.

MITCHEL NEUROCK
United States Magistrate Judge

---

[13]  Plaintiff has not alleged that Officer Cox said anything untoward or sexual to him on either August 13 or August 22, so there is no issue regarding any threat, mental coercion, or psychological abuse.  *Cf. Tyson*, 42 F.4th at 518-19.